UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| SUSAN GARNER, LISA WATSON, CAROLYN KERKHOVE, AND RISA BARHORST, | Court File No.: |
| Plaintiffs, | **COMPLAINT** |
| vs. | **JURY TRIAL DEMANDED** |
| INNOVATIVE INDUSTRIES, INC., a North Dakota corporation, MINNHOP 3343, LLC, a Minnesota limited liability company, MINNHOP 3349, LLC, a Minnesota limited liability company, MINNHOP 3358, LLC, a Minnesota limited liability company, and MINNHOP 3359, LLC, a Minnesota limited liability company, | |
| Defendants. | |

COMES NOW PLAINTIFFS Susan Garner, Lisa Watson, Carolyn Kerkhove and Risa Barhorst, as and for their Complaint against Defendants Innovative Industries, Inc., Minnhop 3343, LLC, Minnhop 3349, LLC, Minnhop 3358, LLC and Minnhop 3359, state and allege as follows:

**PARTIES, JURISDICTION, VENUE AND JURY DEMAND**

1.      Plaintiff Susan Garner ("Ms. Garner") is an individual who resides in Lakeville, Minnesota.  Ms. Garner was previously employed by Defendants as a Quality Assurance Trainer.  Ms. Garner worked at Defendants' various IHOP Restaurants located in Minnesota, Iowa, South Dakota and North Dakota.

2.      Plaintiff Lisa Watson ("Ms. Watson") is an individual who resides in Forest Lake, Minnesota.  Ms. Watson was previously employed by Defendants as an Assistant

19314.0001--997319


SCANNED
DEC 2 9 2011
U.S. DISTRICT COURT MPLS

Manager at Defendants' IHOP Restaurant located at 3701 Stinson Blvd., St. Anthony, Minnesota (the "St. Anthony IHOP").

3.     Plaintiff Carolyn Kerkhove ("Ms. Kerkhove") is an individual who resides in Fridley, Minnesota.  Ms. Kerkhove was previously employed by Defendants as an Assistant Manager at the St. Anthony IHOP and Defendants' IHOP Restaurant located at 14500 Weaver Lake Road, Maple Grove, Minnesota (the "Maple Grove IHOP").

4.     Plaintiff Risa Barhorst ("Ms. Barhorst") is an individual who resides in Moundsview, Minnesota.   Ms. Barhorst was previously employed by Defendants, including as an Assistant Manager at the Maple Grove IHOP.

5.     Defendant Innovative Industries, Inc. ("Innovative Industries") is a North Dakota corporation with a place of business located at 405 Main Avenue West, Suite 1A and Suite 1G, West Fargo, North Dakota 58078.  Innovative Industries' registered agent is Mark R. Hanson, 1800 Radisson Tower, 201 North 5th Street, Fargo, North Dakota 58108-2626.  According to I-9 and W-4 forms contained in Plaintiffs' personnel files received from Defendants, Innovative Industries employed Plaintiffs.

6.     Defendant Minnhop 3343, LLC is a Minnesota Limited Liability Company ("Minnhop 3343").  Minnhop 3343's registered agent is CT Corporation Systems, Inc., 100 South 5th Street, #1075, Minneapolis, MN 55402.  Upon information and belief, Minnhop 3343 is an owner of the St. Anthony IHOP and it may have employed Ms. Garner, Ms. Watson, Ms. Kerkhove and/or Ms. Barhorst.

7.     Defendant Minnhop 3349, LLC is a Minnesota Limited Liability Company ("Minnhop 3349").  Minnhop 3349's registered agent is CT Corporation Systems, Inc.,

100 South 5th Street, #1075, Minneapolis, MN 55402.   Upon information and belief, Minnhop 3349 is an owner of an IHOP restaurant controlled by Innovative Industries and it may have employed Ms. Garner, Ms. Watson, Ms. Kerkhove and/or Ms. Barhorst.

8.     Defendant Minnhop 3358, LLC is a Minnesota Limited Liability Company ("Minnhop 3358").   Minnhop 3358's registered agent is CT Corporation Systems, Inc., 100 South 5th Street, #1075, Minneapolis, MN 55402.   Upon information and belief, Minnhop 3358 is an owner of Defendants' IHOP Restaurant located at 11825 Technology Drive, Eden Prairie, Minnesota (the "Eden Prairie IHOP") and it may have employed Ms. Garner, Ms. Watson, Ms. Kerkhove and/or Ms. Barhorst.

9.     Defendant Minnhop 3359, LLC is a Minnesota Limited Liability Company ("Minnhop 3359").   Minnhop 3359's registered agent is CT Corporation Systems, Inc., 100 South 5th Street, #1075, Minneapolis, MN 55402.   Upon information and belief, Minnhop 3359 is an owner of the Maple Grove IHOP and it may have employed Ms. Garner, Ms. Watson, Ms. Kerkhove and/or Ms. Barhorst.

10.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because certain of the Plaintiffs' claims against Defendants arise under the laws of the United States, as set forth below.   This Court also has jurisdiction pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1343 because Plaintiffs bring this action against Defendants seeking relief for, among other things, the violation of federal overtime laws set forth in United States Code Title 29.

11.     This Court has jurisdiction over Plaintiff's state law claims against Defendants pursuant to 28 U.S.C. § 1367.

19314.0001--997319

3

12.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this judicial district.

13.    Plaintiffs demand a jury trial.

## FACTUAL BACKGROUND

**Susan Garner**

14.    Ms. Garner was employed by Defendants as a Quality Assurance Trainer from December 2010 through September 2011.  Part of Ms. Garner's employment duties involved traveling to and from many different IHOP Restaurants owned by Defendants, including the St. Anthony IHOP, the Eden Prairie IHOP, the Maple Grove IHOP and other IHOP Restaurants in Minnesota, Iowa, North Dakota and South Dakota.

15.    When Defendants offered Ms. Garner employment with them, Defendants told Ms. Garner that she would be provided health insurance for herself and for her family after 90 days of working and that she would be eligible for a bonus program to provide her with compensation over and above her normal salary or hourly wage after 90 days of working.

16.    Defendants made the representations set forth in the previous paragraph with the intent that Ms. Garner would rely upon the representations in deciding whether to be employed by Defendants.

17.    Ms. Garner reasonably relied upon Defendants' representations in deciding to start working for Defendants.

18.    However, after working for Defendants for 90 days, Ms. Garner learned that no health insurance would be provided to her or her family.   Also, Ms. Garner's questions to Defendants seeking information about the bonus program were never answered, and Ms. Garner was never paid any bonus.

19.    Ms. Garner was consistently required to work in excess of 40 or 48 hours per week, and often required to work in excess of 70 or 80 hours per week.

20.    Ms. Garner was not exempt from federal law requiring overtime to be paid on all hours she worked in excess of 40 hours per week.

21.    Ms. Garner was not exempt from Minnesota law requiring overtime to be paid for all hours she worked in excess of 48 hours per week.

22.    Despite the fact that Ms. Garner was sometimes required to work in excess of 40 hours in a week, at certain times Defendants failed to pay Ms. Garner overtime wages for certain of the hours that she worked in excess of 40 hours in a week.

23.    Despite the fact that Ms. Garner was sometimes required to work in excess of 48 hours in a week, at certain times Defendants failed to pay Ms. Garner overtime wages for certain of the hours that she worked in excess of 48 hours in a week.

24.    Defendants also failed to pay Ms. Garner wages, including overtime pay, for the hours she spent traveling between Defendants' IHOP Restaurants even though such travel was a required part of Ms. Garner's work duties.

25.    Certain paychecks that Defendants provided to Ms. Garner "bounced" or were returned for insufficient funds when Ms. Garner attempted to deposit or cash such paychecks.

26.     Many employee payroll checks issued by Defendants "bounced" or were rejected for insufficient funds.

27.     Upon information and belief, Defendants often knew that there were insufficient funds in their payroll account to cover paychecks issued to employees, including Ms. Garner, but Defendants issued the paychecks anyway.

**Lisa Watson**

28.     Ms. Watson was employed by Defendants as an Assistant Manager at the St. Anthony IHOP from May 2011 through October 1, 2011.

29.     When Defendants offered Ms. Watson employment, Defendants told Ms. Watson that she would be provided health insurance for herself and for her family after 90 days of working, that she would be eligible for a bonus program to provide her with compensation over and above her normal salary after 90 days of working, and that her salary would increase when Defendants opened additional IHOP Restaurants.

30.     Defendants made the representations set forth in the previous paragraph with the intent that Ms. Watson would rely upon the representations in deciding whether to be employed by Defendants.

31.     Ms. Watson reasonably relied upon Defendants' representations in deciding to start working for Defendants.

32.     However, after Ms. Watson began working for Defendants, Ms. Watson learned that no health insurance would be provided to her or her family. Ms. Watson was also never paid any bonus, and Ms. Watson's salary was never increased, despite Defendants opening additional IHOP Restaurants after hiring Ms. Watson.

19314.0001--997319

6

33.     Ms. Watson was consistently required to work in excess of 40 or 48 hours per week, and often required to work 65 hours or more per week.

34.     Ms. Watson was repeatedly required to buy food products and other supplies needed to operate the St. Anthony IHOP using her own money.

35.     Ms. Watson was not exempt from federal law requiring overtime to be paid on all hours she worked in excess of 40 hours per week.

36.     Ms. Watson was not exempt from Minnesota law requiring overtime to be paid for all hours she worked in excess of 48 hours per week.

37.     Despite often working in excess of 40 or 48 hours per week, Defendants failed to pay Ms. Watson any overtime compensation for the many hours of overtime that she worked during her employment.

38.     While she was employed by Defendants, Ms. Watson learned that Defendants were issuing payroll checks with insufficient funds in Defendants' payroll account so that such paychecks would "bounce" or be returned for insufficient funds, also known as NSF checks.

39.     As a result, Ms. Watson often was forced to cash employees' checks at Defendants' St. Anthony IHOP restaurant and to pay such employees with cash from the store safe. Further, Ms. Watson also had to pay certain employees such amounts after the employee's payroll check had already "bounced" or had been returned for insufficient funds.

40.     Ms. Watson complained to Susan Hoage ("Ms. Hoage"), the General Manager of Defendants' IHOP Restaurants, and others at Defendants' corporate offices

19314.0001--997319

in North Dakota regarding many of these "bounced" payroll checks. Ms. Watson believed that Defendants' issuance of such insufficient funds payroll checks was unlawful and unethical and she requested that Defendants correct these practices.

41.     However, Ms. Watson's complaints were consistently ignored by Defendants and Defendants did not take any corrective action and the issuance of payroll checks that "bounced" continued.

42.     While she was employed by Defendants, Ms. Watson also learned that one of her kitchen employees worked at both the St. Anthony IHOP and another IHOP Restaurant owned by Defendants.  However, this employee used a different name (apparently with a different social security number) at the other IHOP Restaurant location so that Defendants would avoid having to pay overtime to this employee and also apparently to avoid compliance with immigration laws.

43.     When Ms. Watson complained to Ms. Hoage and Defendants regarding having an employee working at two different IHOP Restaurants using two different names, Ms. Hoage and the Defendants incorrectly dismissed these complaints as inaccurate and Defendants failed and refused to take any corrective action.

44.     Instead of taking corrective action, Ms. Hoage berated Ms. Watson for raising these types of concerns and Defendants continued these unlawful practices.

45.     Ms. Hoage, acting as General Manager on behalf of Defendants, terminated Ms. Watson's employment with Defendants because Ms. Watson had complained to her and others about Defendants' illegal and unethical business practices, including issuing paychecks that "bounced" and having an employee work at different locations using

19314.0001--997319

8

different names so that Defendants could avoid having to pay overtime and comply with immigration laws.

46.     When Ms. Watson came to the St. Anthony IHOP the day after her termination to retrieve her personal belongings, Ms. Hoage physically assaulted her.

**Carolyn Kerkhove**

47.     Ms. Kerkhove was employed by Defendants from February 2011 through September 2011, including working as an Assistant Manager at the St. Anthony IHOP and at the Maple Grove IHOP.

48.     When Defendants offered Ms. Kerkhove employment, Defendants told Ms. Kerkhove that she would be provided health insurance for herself and for her family after 90 days of working and that she would be eligible for a bonus program to provide her with compensation over and above her normal pay after 90 days of working.

49.     Defendants made the representations set forth in the previous paragraph with the intent that Ms. Kerkhove would rely upon the representations in deciding whether to be employed by Defendants.

50.     Ms. Kerkhove reasonably relied upon Defendants' representations in deciding to start working for Defendants.

51.     However, after Ms. Kerkhove began working for Defendants, Ms. Kerkhove learned that no health insurance would be provided to her or her family. Also, Ms. Kerkhove's repeated questions seeking information about the bonus program were never answered, and Ms. Kerkhove was never paid any bonus.

52.     Ms. Kerkhove was consistently required to work in excess of 40 or 48 hours per week, and often required to work in excess of 80 hours per week.

53.     Ms. Kerkhove was not exempt from federal law requiring overtime to be paid on all hours she worked in excess of 40 hours per week.

54.     Ms. Kerkhove was not exempt from Minnesota law requiring overtime to be paid for all hours she worked in excess of 48 hours per week.

55.     Despite often working in excess of 40 or 48 hours per week, Defendants failed to pay Ms. Kerkhove for all of the overtime compensation to which she was entitled for the many hours of overtime that she worked during her employment.

56.     Ms. Kerkhove complained to Ms. Hoage and others at Defendants regarding the long hours she and others were forced to work, and the failure of Defendants to pay her and others overtime compensation.

57.     Ms. Kerkhove's complaints were rejected by Ms. Hoage and Defendants, and no changes in Ms. Kerkhove's or anyone else's compensation or amount of hours worked were made.

58.     Ms. Kerkhove was sexually harassed by her co-worker Christian Martinez on multiple occasions when she worked for Defendants.

59.     Upon information and belief, Mr. Martinez and Ms. Hoage have a romantic relationship.  Upon information and belief, Mr. Martinez is the father of a child born to Ms. Hoage.

60.     Mr. Martinez repeatedly groped and touched Ms. Kerkhove in a sexual manner.  Such groping and touching was not welcomed by Ms. Kerkhove, and

19314.0001--997319

10

Ms. Kerkhove repeatedly told Mr. Martinez to stop, but Mr. Martinez continued to grope and touch Ms. Kerkhove inappropriately.

61.     After Mr. Martinez learned that Ms. Kerkhove was pregnant, he told her that he "wanted to make her more pregnant."   There were also other incidents involving Mr. Martinez making lewd comments to Ms. Kerkhove that were not welcome and which made Ms. Kerkhove upset.   Some of these comments were made in the presence of Ms. Hoage.

62.     Ms. Kerkhove complained to Ms. Hoage about Mr. Martinez's sexual harassment in compliance with Defendants' sexual harassment policy.

63.     Ms. Hoage and Defendants ignored Ms. Kerkhove's complaint and they took no action to correct the situation.   Ms. Hoage dismissed the complaint about Mr. Martinez's conduct, and she repeatedly ignored Mr. Martinez's lewd language and inappropriate touching and groping of employees, including Ms. Kerkhove, when it occurred in her presence.

64.     While she was employed by Defendants, Ms. Kerkhove learned from an Ecolab representative that Defendants were using the incorrect cleaning product in the dishwasher in the restaurant's kitchen. The Ecolab representative told Ms. Kerkhove that continued use of the incorrect product by Defendants could lead to health problems for Defendants' customers.

65.     Ms. Kerkhove complained to and informed Ms. Hoage and Defendants of what the Ecolab representative had told her and urged Defendants to order the correct cleaning product and stop using the incorrect product.

19314.0001--997319

11

66.     In response, Ms. Hoage and Defendants ignored Ms. Kerkhove's complaints regarding the improper cleaning product and continued to use the improper cleaning product at Defendants' restaurants.   Ms. Hoage and Defendants told Ms. Kerkhove to stop raising these types of issues.

67.     On multiple occasions, Ms. Kerkhove's bank refused to deposit or cash paychecks that were issued to her by Defendants.   Officials at Ms. Kerkhove's bank explained that they were refusing to cash or deposit these paychecks because many other paychecks issued by Defendants had been rejected for insufficient funds, *i.e.,* they were NSF checks that had "bounced."

68.     Wal-Mart also refused to cash Ms. Kerkhove's paychecks issued by Defendants.

69.     As a result, Ms. Kerkhove was forced to cash her paychecks at check cashing business that charged inflated fees of more than $20 per paycheck cashed.

70.     When Ms. Hoage learned that Ms. Kerkhove was pregnant while she was working for Defendants, Ms. Hoage made it clear to Ms. Kerkhove that she, Ms. Hoage, did not believe that Ms. Kerkhove could fulfill her job duties if she was pregnant.

71.     As a result, Ms. Hoage and Defendants terminated Ms. Kerkhove from her employment with Defendant because she was pregnant.

72.     Ms. Hoage and Defendants were also motivated in terminating Ms. Kerkhove because Ms. Kerkhove had complained to them regarding use of the incorrect cleaning product at Defendants' restaurants.

73.    Ms. Hoage and Defendants were also motivated in terminating Ms. Kerkhove because Ms. Kerkhove had complained about her and others having to work long hours and the failure of Defendants to pay her and others overtime compensation.

**Risa Barhorst**

74.    Ms. Barhorst was employed by Defendants from January 31, 2011 through September 2011, including working as an Assistant Manager at the Maple Grove IHOP.

75.    When Defendants offered Ms. Barhorst employment, Defendants told Ms. Barhorst that she would be provided health insurance for herself and for her family after 90 days of working and that she would be eligible for a bonus program to provide her with compensation over and above her normal pay after 90 days of working.

76.    Defendants made the representations set forth in the previous paragraph with the intent that Ms. Barhorst would rely upon the representations in deciding whether to be employed by Defendants.

77.    Ms. Barhorst reasonably relied upon Defendants' representations in deciding to start working for Defendants.

78.    However, after Ms. Barhorst began working for Defendants, Ms. Barhorst learned that no health insurance would be provided to her or her family.   Also, Ms. Barhorst's repeated questions seeking information about the bonus program were never answered, and Ms. Barhorst was never paid any bonus.

79.    Ms. Barhorst was consistently required to work in excess of 40 or 48 hours per week, and often required to work in excess of 80 hours per week.

19314.0001--997319

80.     Ms. Barhorst was not exempt from federal law requiring overtime to be paid on all hours she worked in excess of 40 hours per week.

81.     Ms. Barhorst was not exempt from Minnesota law requiring overtime to be paid for all hours she worked in excess of 48 hours per week.

82.     Despite often working in excess of 40 or 48 hours per week, Defendants failed to pay Ms. Barhorst for all of the overtime compensation to which she was entitled for the many hours of overtime that she worked during her employment.

83.     Ms. Barhorst complained to Ms. Hoage and others at Defendants regarding the long hours she and others were forced to work, and the failure of Defendants to pay her and others overtime compensation.

84.     Ms. Barhorst's complaints were rejected by Ms. Hoage and Defendants, and no changes in Ms. Barhorst's or anyone else's compensation or amount of hours worked were made.

85.     While she was employed by Defendants, Ms. Barhorst learned from an Ecolab representative that Defendants were using the incorrect cleaning product in the dishwasher in the restaurant's kitchen. The Ecolab representative told Ms. Barhorst that continued use of the incorrect product by Defendants could lead to health problems for Defendants' customers.

86.     Ms. Barhorst's complained to and informed Ms. Hoage and Defendants of what the Ecolab representative had told her and urged Defendants to order the correct cleaning product.

87.    In response, Ms. Hoage and Defendants ignored Ms. Barhorst's complaints regarding the improper cleaning product and continued to use the improper cleaning product at Defendants' restaurants.  Ms. Hoage and Defendants told Ms. Barhorst to stop raising these types of issues.

88.    Defendants, acting through Ms. Hoage, terminated Ms. Barhorst from her position as Assistant Manager at the Maple Grove IHOP because Ms. Barhorst had complained about her and others having to work long hours and the failure of Defendants to pay her and others overtime compensation.

89.    Ms. Hoage and Defendants were also motivated in terminating Ms. Barhorst because Ms. Barhorst had complained to them regarding the use of the incorrect cleaning product at Defendants' restaurants.

90.    On multiple occasions, Ms. Barhorst's bank refused to deposit or cash paychecks that were issued to her by Defendants.

91.    Officials at Ms. Barhorst's bank explained that they were refusing to cash or deposit these paychecks because many other paychecks issued by Defendants had been rejected for insufficient funds, *i.e.*, they were NSF checks that had "bounced."

## COUNT I
## VIOLATION OF THE FEDERAL FAIR LABOR STANDARDS ACT
## FAILURE TO PAY OVERTIME
### (All Plaintiffs against Defendants)

92.    Plaintiffs restate and reallege each of the allegations set forth in the preceding paragraphs as though set forth in full.

93.   Defendants' actions and practice of not paying each and all of the Plaintiffs overtime pay to which they were entitled is a violation of the Federal Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.,* including 29 U.S.C. § 207(a).

94.   Defendants knew, showed reckless disregard for, or should have known that their failure to pay each and all of the Plaintiffs overtime pay due to them was in violation of these laws.

95.   As a result of Defendants' unlawful practices and violation of the Federal Fair Labor Standards Act, each and all of the Plaintiffs have suffered damages, including an unlawful loss of wages.

96.   Plaintiffs are entitled to recover all damages and other relief provided for under the Fair Labor Standards Act, including liquidated damages and an award of attorney's fees  under 29 U.S.C.§ 216(b).

## COUNT II
## VIOLATION OF MINNESOTA OVERTIME LAWS:
### FAILURE TO PAY OVERTIME
### (All Plaintiffs against Defendants)

97.   Plaintiffs restate and reallege each of the allegations set forth in the preceding paragraphs as though set forth in full.

98.   Defendants' actions and practice of not paying each and all of the Plaintiffs overtime pay to which they were entitled is a violation of Minnesota state overtime laws, including Minn. Stat. § 177.25 *et seq.*

19314.0001--997319

99.   Defendants knew, showed reckless disregard for, or should have known that their failure to pay each and all of the Plaintiffs overtime pay due to them was in violation of these laws.

100.   As a result of Defendants' unlawful practices and violation of Minnesota state overtime laws, each and all of the Plaintiffs have suffered damages, including an unlawful loss of wages.

101.   Plaintiffs are entitled to recover all damages and other relief provided for under Minnesota law, including liquidated damages and an award of attorney's fees under Minn. Stat. § 177.27, subds. 8-10.

## COUNT III
## BREACH OF CONTRACT
### (All Plaintiffs against Defendants)

102.   Plaintiffs restate and reallege each of the allegations set forth in the preceding paragraphs as though set forth in full.

103.   Defendants' failure to provide health insurance to each and all of the Plaintiffs and their families after they worked for Defendants for 90 days constitutes a material breach of contract by Defendants.

104.   Defendants' failure to provide a bonus program for each and all of the Plaintiffs and their families after they worked for Defendants for 90 days constitutes a material breach of contract by Defendants.

105.   Defendants' failure to provide an increase in salary to Ms. Watson after opening other IHOP Restaurants after Ms. Watson began working for Defendants constitutes a material breach of contract by Defendants.

19314.0001--997319

17

106.   These material breaches of contract by Defendants have caused damages to each and all of the Plaintiffs.

**COUNT IV**
**PROMISSORY ESTOPPEL**
**(All Plaintiffs against Defendants)**

107.   Plaintiffs restate and reallege each of the allegations set forth in the preceding paragraphs as though set forth in full.

108.   Defendants intended each and all of the Plaintiffs to rely upon Defendants' promises to provide health insurance in deciding whether to accept Defendants' offer to be employed by Defendants.

109.   Each and all of the Plaintiffs reasonably relied upon Defendants' promises to provide health insurance in deciding to accept Defendants' offer to be employed by Defendants.

110.   Despite their promise to do so, Defendants failed and refused to provide health insurance to Plaintiffs.

111.   Defendants' promise to provide each and all of the Plaintiffs health insurance must be enforced to prevent injustice.

112.   Defendants intended each and all of the Plaintiffs to rely upon Defendants' promise that they would be eligible for a bonus program to provide them with compensation over and above their normal pay in deciding whether to accept Defendants' offer to be employed by Defendants.

113.    Each and all of the Plaintiffs reasonably relied upon Defendants' promise that they would be eligible for a bonus program in deciding to accept Defendants' offer to be employed by Defendants.

114.    Despite their promise to do so, Defendants failed and refused to make Plaintiffs eligible for any bonus program.

115.    Defendants' promise to make each and all of the Plaintiffs eligible for a bonus program must be enforced to prevent injustice.

116.    Defendants intended Ms. Watson to rely upon Defendants' promises to increase Ms. Watson's salary when Defendants opened additional IHOP Restaurants.

117.    Ms. Watson reasonably relied upon Defendants' promise to increase her salary when Defendants opened additional IHOP Restaurants.

118.    Despite their promise to do so, Defendants failed and refused to increase Ms. Watson's salary even after they opened additional IHOP Restaurants.

119.    Defendants' promise to increase Ms. Watson's salary after opening additional IHOP Restaurants must be enforced to prevent injustice.

**COUNT V**
**VIOLATION OF THE FEDERAL FAIR LABOR STANDARDS ACT**
**UNLAWFUL TERMINATION**
**(Plaintiffs Lisa Watson, Carolyn Kerkhove & Risa Barhorst against Defendants)**

120.    Plaintiffs restate and reallege each of the allegations set forth in the preceding paragraphs as though set forth in full.

121.    Defendants' terminated Ms. Watson's employment because she complained to Ms. Hoage and Defendants regarding Defendants' failure to pay overtime.  This action

is a violation of the Federal Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.*, including 29 U.S.C. § 215(a)(3).

122. Defendants' terminated Ms. Kerkhove's employment because Ms. Kerkhove complained about her and others having to work long hours without being paid overtime. This action is a violation of the Federal Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.*, including 29 U.S.C. § 215(a)(3).

123. Defendants' terminated Ms. Barhorst's employment because Ms. Barhorst complained about her and others having to work long hours without being paid overtime. This action is a violation of the Federal Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.*, including 29 U.S.C. § 215(a)(3).

124. As a result of Defendants' unlawful termination of Ms. Watson, Ms. Kerkhove and Ms. Barhorst in violation of the Federal Fair Labor Standards Act, Ms. Watson, Ms. Kerkhove and Ms. Barhorst have each suffered damages, including lost wages, lost benefits, and reduced earning capacity.

125. Ms. Watson, Ms. Kerkhove and Ms. Barhorst are entitled to recover all damages and other relief provided for under the Fair Labor Standards Act, including liquidated damages and an award of attorneys' fees under 29 U.S.C. § 216(b).

**COUNT VI**
**VIOLATION OF MINNESOTA WHISTLEBLOWER ACT**
**MINN. STAT. § 181.932**
**(Plaintiffs Lisa Watson, Carolyn Kerkhove & Risa Barhorst against Defendants)**

126. Plaintiffs restate and reallege each of the allegations set forth in the preceding paragraphs as though set forth in full.

127. Defendants terminated Ms. Watson's employment because she reported to Ms. Hoage and Defendants facts regarding Defendants issuing paychecks that "bounced" and facts regarding Defendants' employing the same employee at two different locations using two different names (and apparently two different social security numbers) in an effort to avoid having to pay overtime and to avoid complying with immigration laws.

128. Defendants terminated Ms. Kerkhove's employment because Ms. Kerkhove complained to Ms. Hoage and Defendants regarding Defendants' use of the incorrect cleaning product at Defendants' restaurants which Ms. Kerkhove understood could lead to health problems for Defendants' customers.

129. Defendants terminated Ms. Barhorst's employment because Ms. Barhorst complained to Ms. Hoage and Defendants regarding Defendants' use of the incorrect cleaning product at Defendants' restaurants which Ms. Barhorst understood could lead to health problems for Defendants' customers.

130. Defendants termination of Ms. Watson, Ms. Kerkhove and Ms. Barhorst violates Minn. Stat. § 181.932, *et seq*.

131. Defendants' unlawful termination of Ms. Watson, Ms. Kerkhove and Ms. Barhorst has caused Ms. Watson, Ms. Kerkhove and Ms. Barhorst to each suffer harm and damages, including without limitation lost wages, lost benefits, and reduced earning capacity.

132. Pursuant to Minn. Stat. § 181.935, Ms. Watson, Ms. Kerkhove and Ms. Barhorst are each entitled to recover all damages each of them has suffered as a

result of Defendants' unlawful termination of their employment, including back pay, compensatory damages and reasonable attorney's fees incurred in pursuing this action.

**COUNT VII**
**SEXUAL HARRASMENT AND UNLAWFUL TERMINATION IN VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT, MINN. STAT. § 363A.08 *et seq.***
**(Plaintiff Carolyn Kerkhove against Defendants)**

133.    Plaintiffs restate and reallege each of the allegations set forth in the preceding paragraphs as though set forth in full.

134.    The conduct and actions of Mr. Martinez and Defendants directed at Ms. Kerkhove constitute unlawful sexual harassment and created an unlawful hostile work environment in violation of the Minnesota Human Rights Act, including Minn. Stat. §§363A.08 and 363A.03.

135.    Ms. Kerkhove was terminated from her employment by Defendants because she was pregnant.  This action is a violation of the Minnesota Human Rights Act, including Minn. Stat. §§363A.08 and 363A.03.

136.    Ms. Kerkhove has suffered damages and injury as a direct result of Defendants' unlawful sexual harassment and creation of an unlawful hostile work environment, and as a result of Defendants' unlawful termination of her employment because she was pregnant.  These damages include, without limitation, lost wages, reduced earning capacity, emotional distress and mental anguish.

137.    Pursuant to Minn. Stat. § 363A.33 and Minn. Stat. § 363A.29, Ms. Kerkhove is entitled to recover all available damages and other relief, including compensatory damages in an amount up to three times the actual damages she has

19314.0001--997319

22

sustained, an award of reasonable attorney's fees incurred in pursuing this action, and other relief and remedies as allowed by law.

## COUNT VIII
## VIOLATION OF MINN. STAT. § 181.02 *et seq.*
## FAILURE TO PAY WAGES WITH NEGOTIABLE CHECKS
### (Plaintiffs Susan Garner, Carolyn Kerkhove and Risa Barhorst against Defendants)

138.   Plaintiffs restate and reallege each of the allegations set forth in the preceding paragraphs as though set forth in full.

139.   Defendants issued paychecks to Ms. Garner which "bounced," or were dishonored or were otherwise rejected by Ms. Garner's bank because there were insufficient funds in Defendants' payroll account.

140.   Defendants' actions constitute a violation of Minnesota wage laws, including Minn. Stat. § 181.02, *et seq.*

141.   Ms. Garner suffered damages as a direct result of Defendants' issuance of paychecks which "bounced," or were dishonored or were otherwise rejected by Ms. Garner's bank because there were insufficient funds in Defendants' payroll account.

142.   Defendants issued paychecks to Ms. Kerkhove that Ms. Kerkhove's bank refused to cash and refused to accept for deposit into her bank account.  Wal-Mart also refused to cash paychecks issued to Ms. Kerkhove by Defendants.

143.   Defendants issued paychecks to Ms. Barhorst that Ms. Barhorst's bank refused to cash and refused to accept for deposit into her bank account.

144.   Defendants' actions in issuing such paychecks to Ms. Kerkhove and Ms. Barhorst constitute a violation of Minnesota wage laws, including Minn. Stat. § 181.02, *et seq.*

145.   Ms. Kerkhove and Ms. Barhorst suffered damages as a direct result of Defendants' issuance of these paychecks.

WHEREFORE, Plaintiffs request and seek the following relief:

1. Judgment against each and all Defendants, jointly and severally, in favor of Plaintiffs for all recoverable damages and injuries suffered by Plaintiffs, including, without limitation, an award for all damages recoverable for the violation of federal and state wage and hour laws, for breach of contract, for promissory estoppel, unlawful termination, sexual harassment, and for any and all other claims asserted by Plaintiffs.

2. Judgment against Defendants for compensatory damages, liquidated damages, statutory damages recoverable under applicable federal and state law, civil penalties, costs and disbursements, witness fees, attorney's fees, and any and all other damages, costs, penalties and expenses recoverable pursuant to applicable law, including without limitation 29 U.S.C. § 216 and Minn. Stat. §§ 177.27, 181.13, and 181.171, 181.935, 363A.29, and 363A.33.

3. An award of injunctive and/or equitable relief available under applicable law, including without limitation all such appropriate relief allowed by 29 U.S.C. § 216 and Minn. Stat. §§ 177.27, 181.13, and 181.171, 181.935, 363A.29, and 363A.33.

4. For such other and further relief as the Court deems just and proper.

HELLMUTH & JOHNSON, PLLC

Dated: December 29, 2011

By: _____

Karl E. Robinson, Esq., Atty. No. 0274045
8050 West 78th Street
Edina, MN 55439
Tel: 952.941.4005
Fax: 952.941.2337
E-mail: kerobinson@hjlawfirm.com

ATTORNEYS FOR PLAINTIFFS

19314.0001--997319